# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT, L.L.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN KERMATH, ) <br> ) <br> Defendant. ) <br> _____ ) <br> JOHN KERMATH, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RITCHIE CAPITAL MANAGEMENT, L.L.C., ) <br> AARON ROBERTS THANE RITCHIE, and ) <br> PLAN ADMINISTRATOR FOR THE ) <br> RITCHIE CAPITAL MANAGEMENT, L.L.C. ) <br> BENEFIT PLANS, ) <br> ) <br> Counter-Defendants. ) | No. 15 C 8021 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Ritchie Capital Management, L.L.C. ("Ritchie Capital"), an investment management company, filed suit against John Kermath, its former president, for misappropriating Ritchie Capital's confidential and privileged information. Kermath filed counterclaims against Ritchie Capital, the Plan Administrator for the Ritchie Capital Management, L.L.C. Benefit Plans (the "Plan Administrator"), and Ritchie Capital's founder and former chief executive officer, Aaron Roberts Thane Ritchie ("Thane Ritchie," and collectively with Ritchie Capital and the Plan Administrator, the "Ritchie Parties"), seeking to recover benefits arising from his alleged misclassification as an independent contractor while working for Ritchie Capital, in addition to

outstanding wages, bonuses, and other employment-related compensation he did not receive when he left Ritchie Capital's employment.[1] Kermath brings his claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Illinois Wage Payment and Collection Act (the "IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, and the common law of unjust enrichment. Because Kermath agreed not to receive any benefits Ritchie Capital offered its employees and he has not pleaded facts to suggest he did not enter into the waiver knowingly and voluntarily, the Court dismisses Kermath's ERISA benefits claim without prejudice. Kermath's IWPCA claim for unpaid compensation may proceed because he has sufficiently alleged an agreement for payment so as to put Ritchie Capital and Thane Ritchie on notice of the contours of that claim, although he cannot pursue this claim with respect to accrued unused vacation time. But the Court dismisses Kermath's unjust enrichment claim, which seeks the same recovery as the IWPCA claim, because it is governed by his compensation agreements with Ritchie Capital, and Kermath has not properly pleaded the claim in the alternative.

## BACKGROUND[2]

Ritchie Capital manages investment funds. Although it currently has its headquarters in the Cayman Islands, it also had offices in Illinois. It was in Illinois where Kermath began working for Ritchie Capital in May 2006.

---

[1] Ritchie Capital filed suit against not only Kermath but also Reservoir Capital Partners, L.P., Reservoir Capital Group L.L.C., Reservoir Capital Master Fund, L.P., Reservoir Capital Master Fund II, L.P., Reservoir Capital Investment Partners, L.P. (collectively, "Reservoir"), and Eric Engler. Reservoir then filed counterclaims against the Ritchie Parties. All claims among the Ritchie Parties, Reservoir, and Engler have been dismissed with prejudice pursuant to the parties' joint motion. Docs. 63, 65. Only the claims between the Ritchie Parties and Kermath remain pending.

[2] The facts in the background section are taken from Kermath's counterclaims and are presumed true for the purpose of resolving the Ritchie Parties' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the counterclaim and central to Kermath's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

At all times, Ritchie Capital treated Kermath as an independent contractor. Ritchie Capital memorialized Kermath's employment arrangement in an amended and restated professional services agreement ("PSA"), signed by Kermath on November 14, 2008 and retroactive to May 6, 2006.[3] The PSA specifically provides that Kermath was an independent contractor, that nothing in the PSA "should be construed to create . . . [an] employer-employee relationship," and that Kermath "is not the agent of [Ritchie Capital] and is not authorized to make any representation, contract, or commitment on behalf of [Ritchie Capital]." Doc. 56-1 § 3. Further, the PSA provides that Kermath "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees, such as group insurance, profit-sharing, or retirement benefits." *Id.* Ritchie Capital agreed to pay Kermath "a fee for services rendered under the [PSA] as set forth in Exhibit A," as well as to reimburse him "for any reasonable expenses incurred in connection with the performance of services under" the PSA. *Id.* § 2. Upon the PSA's termination, Ritchie Capital was to pay Kermath "fees and expenses on a proportional basis . . . for work which is then in progress, up to and including the effective date of such termination." *Id.* Exhibit A only set forth that Kermath's fee for his services was to be "based on a rate per month as determined from time to time." *Id.* at 6.

Despite the PSA's formalization of his status as an independent contractor, Kermath's day-to-day activities suggested an employer-employee relationship: he used Ritchie Capital's email, phone, and computer systems, office space, and business equipment; he had a Ritchie Capital email address; Ritchie Capital provided Kermath with a company-issued Blackberry and

---

[3] The Ritchie Parties attach to their reply an original professional services agreement, which Kermath signed on May 10, 2006. Doc. 59-1. The Court does not consider this original agreement, as Kermath does not reference it in his counterclaims nor is it central to his complaint. Moreover, the Ritchie Parties could have, but did not, attach it to their opening memorandum in support of their motion to dismiss and instead waited until the reply and until Kermath could not respond further to their arguments concerning this agreement to provide it to the Court.

paid for the data charges; he routinely worked five days a week from Ritchie Capital's Illinois offices; he used a corporate credit card for business-related expenses; and he reported to one or more superiors and supervised other employees. Additionally, Ritchie Capital paid Kermath bonuses tied in part to his work performance and he received deferred compensation amounts based on the performance of Ritchie Capital managed funds.

In September 2007, Ritchie Capital promoted Kermath to president of the company, with Thane Ritchie remaining as chief executive officer. Kermath began signing documents on Ritchie Capital's behalf and had access to almost all aspects of the business. His job duties included asset management, staffing and supervision of employees, oversight of the accounting department, audit management, valuations, and litigation strategy. Kermath also determined bonus payments and salaries for other Ritchie Capital employees, subject to Thane Ritchie's final approval. When Thane Ritchie moved out of the country, Kermath effectively became the *de facto* chief executive officer as well, with certain Ritchie Capital regulatory filings even identifying him as such.

On March 17, 2015, Thane Ritchie reasserted day-to-day operational control over Ritchie Capital and demoted Kermath to vice president. He then reappointed Kermath as president in April 2015. This did not last long, however, as Thane Ritchie again demoted Kermath to vice president on May 8. Kermath resigned from Ritchie Capital on August 7, 2015. When he left, he did not receive his outstanding compensation from Ritchie Capital, which included a base $30,000 monthly payment he had received since he started working for Ritchie Capital and a portion of his 2014 bonus that Ritchie Capital had agreed in writing to pay him no later than September 30, 2015.[4]

---

[4] Although Kermath did not include these details in his counterclaim but rather in his response, the Court can consider them here because they are consistent with the facts alleged in his counterclaim. *See Help at*

4

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.     ERISA Claim (Count I)**

Kermath claims that Ritchie Capital misclassified him as an independent contractor and so wrongfully excluded him from coverage under its employer-sponsored benefit plans during his employment. He seeks to recover all benefits allegedly due him under these benefit plans and to clarify his rights to future benefits, if any. To state a claim for these benefits under ERISA, Kermath must allege (1) he qualifies as an employee, and (2) he was eligible to receive benefits under the terms of Ritchie Capital's benefit plans. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 571 (7th Cir. 2009); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992) (adopting test for

---

*Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (plaintiff may add facts in response to motion to dismiss if they are consistent with the allegations of the complaint).

determining who qualifies as an employee under ERISA). The Ritchie Parties argue that Kermath's claim fails on both elements because the PSA establishes that he worked as an independent contractor for Ritchie Capital and agreed that he did not have any entitlement to benefits Ritchie Capital made available to its employees.[5]

Initially, the Court cannot definitively decide Kermath's status as an independent contractor or an employee based solely on the pleadings. Courts use a ten-factor test to determine if an individual qualifies as an employee under ERISA, considering:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; (10) whether the principal is or is not in business.

*Suskovich*, 553 F.3d at 565–66. Although the PSA designates Kermath as an independent contractor, this alone is not dispositive. *See E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 705 (7th Cir. 2002) (noting that Supreme Court, in *Darden*, rejected "mechanical test" in determining who qualified as an employee, setting forth a list of factors to consider instead of merely saying "that an employee is anyone who is called an employee"); *Cox v. Gannett Co.*, No. 1:15-cv-02075-JMS-DKL, 2016 WL 1425525, at *4 (S.D. Ind. Apr. 12, 2016) (plaintiff's

---

[5] The Ritchie Parties do not argue that Kermath has not exhausted his administrative remedies, and so the Court does not address this issue. *See In re FedEx Ground Package Sys., Inc.*, 722 F. Supp. 2d 1033, 1047–52 (N.D. Ind. 2010) (finding that exhaustion would not be futile where plaintiffs contended they were misclassified as independent contractors because issue of eligibility under plans needed to be determined).

label as independent contractor did not preclude him from being a participant for purposes of ERISA claim). Kermath alleges that the PSA's classification of him as an independent contractor was void and that he acted as an employee, not an independent contractor, providing specific examples to suggest that status. For example, Kermath claims that he worked out of Ritchie Capital's offices using Ritchie provided equipment on a full-time uninterrupted basis for over nine years. He also alleges that he supervised other Ritchie Capital employees, setting their compensation and conducting performance reviews, and that he himself took on specific officer roles within the company, including those of president and vice president, signing documents on Ritchie Capital's behalf. Kermath's allegations suffice to allege that Ritchie Capital should have treated him as an employee. *See Brown v. Club Assist Road Serv. U.S., Inc.*, No. 12 CV 5710, 2013 WL 5304100, at *5–6 (N.D. Ill. Sept. 19, 2013) (allowing plaintiffs to proceed on FLSA claim, noting that final analysis as to whether plaintiffs should be considered employees was "a matter more appropriately resolved at summary judgment"); *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 709 (N.D. Ill. Mar. 1, 2007) (determining whether party is employee or independent contractor under agency rules was necessarily fact-intensive determination that could not be made on motion to dismiss); *Oplchenski v. Parfums Givenchy, Inc.*, No. 05 C 6105, 2007 WL 495289, at *4 (N.D. Ill. Feb. 12, 2007) (court could not determine whether plaintiffs were entitled to be participants in ERISA plans at motion to dismiss stage).

But even assuming that Ritchie Capital misclassified Kermath as an independent contractor, the Ritchie Parties argue that Kermath cannot proceed on his ERISA claim because he explicitly waived any claim to such benefits in the PSA. *See* Doc. 56-1 § 3 ("[Kermath] will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees, such as group insurance, profit-sharing, or retirement benefits."). The Ritchie Parties contend

7

that this exclusion is enforceable because an employer "need not extend [its] benefit plan to all employees." *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1440 (7th Cir. 1996); *see also Bauer v. Summit Bancorp*, 325 F.3d 155, 166 & n.20 (3d Cir. 2003) ("Summit could limit plan participation to certain groups or classifications of employees, as long as that limitation was not based upon age or length of service."). Thus, according to the Ritchie Parties, regardless of whether Kermath was an employee, he agreed not to receive benefits and the Court should enforce that agreement. *See Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1410 (7th Cir. 1998) (enforcing agreement between newspaper and its carriers that provided that carriers would not be treated as employees and would not receive "any benefits or other compensation currently paid by The Star to its employees or hereafter declared by The Star for the benefit of its employees"); *Bendsen v. George Weston Bakeries Distribution Inc.*, No. 4:08CV50 JCH, 2008 WL 4449435, at *3–4 (E.D. Mo. Sept. 26, 2008) (finding on motion to dismiss that, regardless of whether they met the common law definition of employee, plaintiffs lacked standing to assert ERISA claims because they disavowed any claims to benefits in their distribution agreements); *Robinson v. Mt. Carmel Med. Ctr., Inc.*, No. Civ.A.05-1091-MLB, 2005 WL 1521962, at *2–3 (D. Kan. June 27, 2005) (finding on motion to dismiss that plaintiff's contract, in which she agreed she had no claim for benefits "customarily arising from an employer/employee relationship" precluded her from having standing to bring ERISA claim).

Kermath responds that the Court should not prematurely determine that he waived his rights to benefits at the motion to dismiss stage because such waiver must be made knowingly and voluntarily, a determination that cannot be made from the face of the complaint.[6] *See Melton v. Melton*, 324 F.3d 941, 945 (7th Cir. 2003) (for beneficiary to waive ERISA benefits,

---

[6] Kermath does not argue, as he does with respect to his classification as an independent contractor in the PSA, that the waiver provision of the PSA is void, nor does the counterclaim contain any such allegations.

waiver must be "explicit, voluntary, and made in good faith" (citation omitted)); *Finz v. Schlesinger*, 957 F.2d 78, 81 (2d Cir. 1992) (ERISA waivers are given stricter scrutiny than those in typical contract cases); *Craig v. Smith*, 597 F. Supp. 2d 814, 823 (S.D. Ind. 2009) (collecting cases). Kermath put the waiver at issue in his counterclaim by directly quoting its language,[7] but he did not suggest that he did not enter into the waiver knowingly or voluntarily, as he does in his response. Instead, he all but ignores the waiver in his counterclaim despite acknowledging its existence in the PSA, proceeding as if it does not exist and the only roadblock to his receiving benefits is his alleged misclassification as an independent contractor. Only in the face of the Ritchie Parties' motion to dismiss does Kermath change his tune.[8] Although Kermath attempts to argue that he did not knowingly and voluntarily waive his right to benefits in his response by pointing to a lack of allegations in the counterclaim to that end, Kermath cannot amend his counterclaim to counter the Ritchie Parties' motion to dismiss by way of arguments made in his response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Moreover, the lack of such allegations suggests the opposite—that there were no issues with the waiver of benefits.

Because Kermath has not included allegations in his counterclaim to counter the effect of the waiver of benefits included in the PSA, the Court agrees with the Ritchie Parties that, as

---

[7] Kermath does not argue that the Court should view the waiver issue as an affirmative defense and so the Court does not treat it as such.

[8] Kermath also argues in a footnote that the PSA may not be enforceable because it does not identify any consideration for its execution. *See* Doc. 58 at 9 n.5. The Court need not address this undeveloped argument here, particularly where Kermath alleges no facts in his counterclaim to suggest that anything but the classification of him as an independent contractor in the PSA was void based on his actual job duties for Ritchie Capital at the time he signed the PSA. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 n.1 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived."). To the extent Kermath seeks to pursue a claim of the PSA's invalidity as a whole, he should amend his counterclaim accordingly.

pleaded, he may not proceed on his ERISA claim because he has not adequately alleged his eligibility to receive benefits under Ritchie Capital's benefit plans.[9] *See Capital Cities*, 141 F.3d at 1410.[10] This waiver, unlike that in *Stewart v. Project Consulting Services, Inc.*, does not depend on Kermath's contractual status as an independent contractor. *Cf.* No. CIV. A. 99-3595, 2001 WL 1334995, at *2–3 (E.D. La. Oct. 26, 2001) (finding that plaintiff did not waive right to pursue ERISA benefits where agreement provided that "plaintiff is not entitled to employee benefits *because* he is not an employee"). Instead, Kermath's waiver is almost identical to that found in *Capital Cities*, providing that he "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees," and thus operates independently of the PSA's designation of Kermath as an independent contractor. Doc. 56-1 § 3. The Court will provide Kermath an opportunity to amend his claim to the extent he can allege facts that may overcome that waiver. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011) (listing eight factors courts consider in determining whether releases of ERISA claims are valid); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 182 (1st Cir. 1995) (noting "fact-intensive" nature of waiver inquiry). *But see Capital Cities*, 141 F.3d at 1410 (noting on summary judgment that argument that carriers were unaware of waiver was unavailing where they had

---

[9] The Court notes that Kermath does not attempt to argue that the Court should not enforce the waiver merely based on his misclassification as an independent contractor, as suggested by the Ninth Circuit in *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997) (labeling of worker as independent contractor in agreement, along with waiver of benefits that follows, does not matter if worker is actually a common law employee). *See also Barnard v. Advance Pension Plan*, No. 06-6265-HO, 2008 WL 4838844, at *6 (D. Or. Nov. 4, 2008) (following *Vizcaino*).

[10] Kermath makes much of the fact that *Capital Cities* was decided on a motion for summary judgment. Although the carriers in *Capital Cities* had the opportunity to present arguments as to the voluntariness of the waiver and whether they were coerced into signing the waiver, at this stage, Kermath has not even placed such questions at issue, instead merely alleging that the PSA contained the waiver, which forecloses any claim for eligibility. The Court acknowledges that dismissal now may not end Kermath's pursuit of the claim; it instead merely requires Kermath to meet his burden at the pleading stage to allege eligibility to receive benefits under the terms of Ritchie Capital's benefit plans.

worked for years without benefits and never "expressed dissatisfaction with their compensation package, including their non-participation in" the benefit plans).

## II. IWPCA Claim (Count II)

Kermath also brings a claim under the IWPCA, alleging that Ritchie Capital and Thane Ritchie have not paid him his final compensation, comprised of wages, bonuses, and accrued, unused vacation, that they allegedly owe him for work performed through and including the date of his resignation in August 2015. The IWPCA provides Kermath with a cause of action to recover final compensation, defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. 115/2. The Ritchie Parties argue that Kermath has not adequately alleged an agreement to pay him the specified compensation, that the PSA bars any claims for bonuses or vacation time, and that Kermath has not provided any specifics as to the agreed upon rate for his work, the work that remains uncompensated, or the total amount they owe him.

Taking the last argument first, Kermath provided additional details surrounding his IWPCA claim in his response, which the Court can consider to supplement his allegations. *See Ziccarelli v. Phillips*, No. 12 CV 9602, 2013 WL 5387864, at *9 (N.D. Ill. Sept. 25, 2013) (considering additional allegations of terms of parties' alleged agreements to support claims in plaintiffs' response). He claims that Ritchie Capital paid him $30,000 each month, including when on vacation, and that Ritchie Capital has still not paid him half of his documented 2014 bonus, a six-figure amount, even though Ritchie Capital promised in writing to pay it no later

11

than September 30, 2015. This suffices to provide the Ritchie Parties with notice of the amounts Kermath seeks to recover.

Next, Kermath responds that, although the PSA may not have explicitly set out the bonus structure, by repeatedly paying him a bonus and deferred compensation, Ritchie Capital caused these aspects of his compensation to become terms of his employment. *See Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059, 356 Ill. App. 3d 1060, 293 Ill. Dec. 170 (2005) ("[E]mployers and employees can manifest their assent to conditions of employment by conduct alone. . . . [A]n employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation[.]"). *But see Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (plaintiff cannot use "past practice" to create a contract to support IWPCA claim for unpaid bonus). The PSA indicates that Kermath's fee will be based on a rate per month to be determined from time to time, but Kermath also alleges that Ritchie Capital paid him bonuses tied in part to his work performance and awarded him deferred compensation based on the performance of Ritchie Capital's managed funds. According to Kermath, Thane Ritchie approved the wages, bonuses, and deferred compensation he received. This suggests that the parties reached some type of agreement concerning the rate at which Kermath was to be paid under the PSA and that bonuses could have been part of that rate. [11] The Ritchie Parties argue that no such agreement could exist because the PSA includes an integration clause and requires any changes to be in writing, but

---

[11] Kermath's allegations are less clear as to whether the parties had an agreement concerning vacation time. In his response, he states that Ritchie Capital paid him $30,000 each month, including months when he was on vacation. This suggests that he did not have vacation days but merely that, in calculating his final compensation, Kermath contends that no amounts should be deducted for days he did not work during the outstanding pay periods. To the extent Kermath attempts to recover separately for vacation days, he has not plausibly suggested that he had an agreement to be compensated for unused vacation days and so cannot pursue that as part of his IWPCA claim. *See Grant v. Bd. of Educ. of City of Chi.*, 668 N.E.2d 1188, 1196, 282 Ill. App. 3d 1011, 218 Ill. Dec. 356 (1996) (noting absence of contractual obligation for payment of accumulated unused sick leave).

these requirements may have been waived by conduct. *See Wilder v. J.C. Christensen & Assocs., Inc.*, No. 16-cv-1979, 2016 WL 7104283, at *5 (N.D. Ill. Dec. 6, 2016) (discussing waiver requirements); *Landers-Scelfo*, 827 N.E.2d at 1059 (amount of compensation can be set by conduct if consistent with agreement). Alternatively, at least with respect to the bonus Kermath seeks to recover, he alleges that Ritchie Capital agreed to that bonus in writing. Discovery may prove Kermath's allegations false, but at this stage, Kermath has alleged enough to proceed on his IWPCA claim for unpaid wages and bonuses.

### III. Unjust Enrichment (Count III)

Finally, Kermath claims that Ritchie Capital and Thane Ritchie have been unjustly enriched because they have not properly compensated Kermath for work he has already performed. But "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016). Here, Kermath's relationship with Ritchie Capital and his claims concerning unpaid compensation are governed by the PSA and offshoot compensation agreements, which appear to bar his unjust enrichment claim. In response, Kermath argues that he has alleged that the PSA was void *ab initio*, allowing him to pursue his unjust enrichment claim in the alternative to his IWPCA claim. Although this may have been Kermath's intention, his counterclaim only alleges that the PSA's designation of him as an independent contractor was void, leaving the remainder of the PSA, including as it relates to compensation, intact. Additionally, Kermath incorporated the entirety of his allegations, including those related to his IWPCA claim, into his unjust enrichment claim, failing to accurately plead in the alternative. *See Nathan v. Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003)

("While Plaintiff is entitled under Federal Rule of Civil Procedure 8(e)(2) to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties' relationship."). Because Kermath's unjust enrichment claim challenges the terms of the parties' compensation agreements and is not pleaded in the alternative, the Court must dismiss his unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Ritchie Parties' motion to dismiss [55]. The Court dismisses Kermath's ERISA and unjust enrichment claims (Counterclaim Counts 1 and 3) without prejudice. The Court limits Kermath's IWPCA claim (Counterclaim Count 2) to unpaid wages and bonuses, dismissing any claim for accrued unused vacation time.

Dated: December 13, 2016

_____
SARA L. ELLIS
United States District Judge