**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RITCHIE CAPITAL MANAGEMENT, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>ERIC ENGLER,<br><br>Defendant,<br><br>RESERVOIR CAPITAL PARTNERS, L.P., RESERVOIR CAPITAL GROUP L.L.C., RESERVOIR CAPITAL MASTER FUND, L.P., RESERVOIR CAPITAL MASTER FUND II, L.P., RESERVOIR CAPITAL INVESTMENT PARTNERS, L.P., AND JOHN KERMATH,<br><br>Defendants-Counterplaintiffs,<br><br>v.<br><br>RITCHIE CAPITAL MANAGEMENT, L.L.C., A.R. THANE RITCHIE, PLAN ADMINISTRATOR FOR RITCHIE CAPITAL MANAGEMENT'S BENEFITS PLANS,<br><br>Counterdefendants. | ) | No. 1:15-cv-8021<br><br>Hon. S. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANT JOHN KERMATH'S FIRST AMENDED COUNTERCLAIMS**

Thomas K. Cauley, Jr.
Brian A. McAleenan
Veena K. Gursahani
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Plaintiff and Counter-Defendants*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT ..........................................................................................................................5

I. Counts I & II Fail Because Kermath Validly Waived His ERISA Claims...............................5

A. Kermath Waived His Rights to Ritchie Capital's Benefit Plans..................................6

B. Kermath Fails To Allege Plausibly That His Waiver Of Benefits Is Invalid. ...............7

1. Kermath's Status As an Employee or Independent Contractor Is Irrelevant...........7

2. Kermath Has Not Established (And Cannot Establish) That The Agreements Are Void *Ab Initio*. .........................................................................................8

3. Kermath Knowingly and Voluntarily Waived The Benefits. ...............................10

II. Counts IV & V Must Be Dismissed Because Kermath Failed to State Claims For Unjust Enrichment And Promissory Estoppel. .......................................................14

CONCLUSION.....................................................................................................................15

## INTRODUCTION

Plaintiff Ritchie Capital Management, L.L.C. ("Ritchie Capital"), the Plan Administrator for Ritchie Capital Management's Benefits Plans, and A.R. Thane Ritchie ("Thane Ritchie") (collectively, "Counter-Defendants"), by their attorneys, submit this memorandum of law in support of their Motion to Dismiss Defendant John Kermath's Amended Counterclaims Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant John Kermath ("Kermath") filed Amended Counterclaims in response to this Court's dismissal of two of his three originally pleaded counterclaims. (Dkt. 74 ("Order").) Kermath now re-pleads his claims for a violation of the Employee Retirement Income Security Act ("ERISA") and for unjust enrichment, and also brings two new claims – one for a judgment declaring the parties' 2008 agreement void *ab initio* and one for promissory estoppel. The new and re-pleaded counterclaims (Counts I, II, IV, V) warrant dismissal as a matter of law.

Kermath's amended ERISA claim seeks compensation for allegedly being wrongfully denied benefits under the health insurance, pension and other benefit plans that Ritchie Capital provided to employees. As the Court held with his original counterclaim (Order 9-10), the ERISA claim fails because Kermath waived any entitlement to such benefits; first under the Personal Services Agreement he signed when he began his relationship with Ritchie Capital in May 2006 ("2006 Agreement"), and again under the amended and restated Personal Services Agreement he signed in November 2008 ("2008 Agreement").[1] Such contractual waivers – even assuming *arguendo* Kermath was an employee otherwise entitled to benefits – bar the ERISA claim. Order 9-10; *see also Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405 (10th Cir. 1998).

---

[1] Together, the 2006 Agreement and 2008 Agreement are referred to herein as the "Agreements." In the Agreements, Kermath and Ritchie Capital agreed that Kermath "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees ...." (Am. Countercl., Exs. 1 & 2, § 3.)

Kermath tries to save his ERISA claim with new allegations that the waiver is not enforceable because (1) the Agreements are void, and (2) the waiver was not knowingly and voluntarily made. Neither effort succeeds.

Kermath's argument that the Agreements are void is as follows: although the agreements state that Kermath is an independent contractor, he alleges he is an employee under the ERISA multi-factor test; therefore, the Agreements are unenforceable. That is a non-sequitur. At most, Kermath's allegations establish (at the pleading stage) that the *provision* classifying him as an independent contractor is unenforceable. That does not render the agreement as a whole – or his waiver of employee benefits – void or unenforceable. Confirming that point, the Agreements contain a severability clause, stating that if one provision is declared void or unenforceable, the other provisions remain in full force and effect.

The allegations that his waiver was not "knowing and voluntarily" likewise fail to save Kermath's ERISA claim. Those allegations center on the assertion that Kermath lacked adequate time to consult his attorney before signing the 2006 Agreement, and again before signing the 2008 Agreement. But those are mere conclusions, and not the facts needed to state a plausible claim. Nowhere does Kermath (i) allege that Ritchie Capital imposed a time limit on his ability to consider the Agreements, (ii) identify the time period to which he supposedly was limited or (iii) explain why such time period was insufficient. Most significantly, Kermath never alleges that he asked Ritchie Capital for more time and was refused. Ritchie Capital cannot be denied the benefit of its bargain on account of alleged duress that it had no opportunity to remove.

Kermath's assertion that his waiver was not knowing and voluntary is also belied by his other allegations. Kermath was a sophisticated professional whose duties included managing assets, performing valuations, providing advice on fund restructurings, and signing legal and

other documents for Ritchie Capital, an investment fund manager. Kermath admits he had access to all aspects of Ritchie Capital's business (and thus employee benefits plans). He clearly had the capacity to know and understand, in the face of clear language, what he was waiving. This is particularly true given that Kermath voluntarily waived his benefits not just when he began with Ritchie Capital in May 2006, but again in November 2008 – over a year after he became President of Ritchie Capital and after two years of working without benefits, during which time he never complained. Kermath's second, confirming waiver forecloses the notion that Kermath can plausibly allege that he did not knowingly and voluntarily waive his benefits. Kermath should be held to his waiver. The ERISA claim should be dismissed.

The failure to allege facts that the Agreements generally, or the benefits waivers specifically, are void or unenforceable necessarily defeats his request for declaratory judgment that the Agreements are void, and also forecloses his unjust enrichment and promissory estoppel claims. As the Court already held, if a contract governs the parties' relationship, then no equitable claim concerning the same subject can lie. Unable to plead that his contractual waivers are unenforceable, Kermath cannot avoid, or re-write, the parties' Agreements using equitable claims. Those claims should be dismissed.

## STATEMENT OF FACTS

Ritchie Capital is an investment fund manager and advisor, for which Kermath worked under the classification of independent contractor from May 2006 until August 2015. (Am. Countercl. ¶¶ 6, 36.) Thane Ritchie is Ritchie Capital's founder and CEO. (*Id.* at ¶ 130.)

In May 2006, Kermath signed the 2006 Agreement. (Am. Countercl., Ex. 1.) The 2006 Agreement contained a provision stating that Kermath "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees ...." (*Id.* at Ex. 1, § 3.) In September 2007, Kermath became Ritchie Capital's President. (*Id.* at ¶ 50.) He served as Ritchie Capital's

President for nearly all of the ensuing eight year period, and he resigned in August 2015. (*Id.* at ¶ 63.) As President, Kermath had "access to almost every aspect of [Ritchie Capital's] business," and his responsibilities included asset management, investment fund restructuring, audit oversight, and employment issues, such as supervising and evaluating subordinates and managing company policies. (*Id.* at ¶¶ 53, 59, 60, 62, 65.) He signed documents on behalf of Ritchie Capital, including legal documents. (*Id.* at ¶¶ 51, 57, 134.) In November 2008, more than a year after he became Ritchie Capital's President, Kermath signed the 2008 Agreement, which amended and restated the terms of his engagement with Ritchie Capital retroactive to May 6, 2006. (*Id.* at Ex. 2.) The 2008 Agreement contained a benefits waiver identical to that in the 2006 Agreement: Kermath "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees …." (*Id.* at § 3.) Kermath operated under both the Agreements without challenge or complaint until his resignation in 2015. (*Id.* at ¶ 93.)

In addition to the waiver clause, the 2008 Agreement contains several other provisions material to this motion. It states Kermath would receive "a fee for services rendered"; be "reimbursed for any reasonable expenses incurred in connection with the performance of services"; and, upon termination, be paid "fees and expenses on a proportional basis." (Am. Countercl., Ex. 2 at § 2.) The 2008 Agreement does not state that Kermath would receive bonuses, deferred compensation or vacation time. (*Id.*) Kermath could terminate the 2008 Agreement "at any time upon fourteen (14) days' prior written notice" to Ritchie Capital. (*Id.* at § 7.2.) The 2008 Agreement also includes a severability clause, providing that should any provision be held invalid or unenforceable, such invalidity or unenforceability "shall not affect the other provisions of this Agreement." (*Id.* at § 8.2.) Finally, the 2008 Agreement contains an

integration clause, stating that the Agreement, with its Exhibits, "is the final, complete and exclusive agreement of the parties with respect to the subject matter ... ." (*Id.* at § 8.9.)

**ARGUMENT**

Well-pleaded claims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff cannot "nudge[ ] [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Where a plaintiff has not been able to correct a deficient pleading, dismissal with prejudice is appropriate. *See*, *e.g.*, *Ennenga v. Starns*, 10 C 5016, 2012 WL 1899331, at *3 (N.D. Ill. May 23, 2012).

**I. <u>Counts I & II Fail Because Kermath Validly Waived His ERISA Claims.</u>**

To state a claim for benefits under ERISA, Kermath must allege that he is (1) an "employee" and (2) "eligible to receive a benefit of any type from an employee benefit plan." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 320-21 (1992) (quoting 29 U.S.C. § 1002(7)). Failure to establish either prong defeats the claim. *See Bauer v. Summit Bancorp.*, 325 F.3d 155, 160 (3d Cir. 2003). Because Kermath freely and consciously waived his right to the benefits he seeks, his ERISA claim must be dismissed.[2]

---

[2] Ritchie maintains that Kermath cannot establish the first element of the claim, *i.e.*, that Kermath was an "employee" of Ritchie. Kermath freely chose independent contractor status in the Agreements, and there are good reasons a person in Kermath's position would do so, such as the ability to manage funds outside of Ritchie Capital, and to take advantage of well-recognized tax benefits of independent contractor status such as additional deductions, avoidance of withholding and accrual accounting. However, given this

### A. Kermath Waived His Rights to Ritchie Capital's Benefit Plans.

As this Court previously recognized (Order 9-10), parties can waive their rights to receive ERISA benefits by agreement. *See Capital Cities*, 141 F. 3d at 1410 (enforcing agreement whereby newspaper carriers would not receive any benefits or other compensation paid to other employees); *Robinson v. Mt. Carmel Med. Ctr.*, No. 05-1091-MLB, 2005 WL 1521962 (D. Kan. June 27, 2005).[3] An agreement to waive ERISA benefits is enforceable so long as it constitutes a mutual understanding that the party would not receive benefits. *Capital Cities*, 141 F. 3d at 1410; *Muller v. Am. Mgmt. Ass'n Intern.*, 368 F. Supp. 2d 1166, 1174 (D. Kan. 2004).

In the 2006 Agreement and the 2008 Agreement, Kermath expressly and unambiguously agreed that he "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees, such as group insurance, profit-sharing, or retirement benefits ...." (Am. Countercl., Exs. 1 & 2 at § 3.) This language mirrors the waiver in *Capital Cities*, which stated that plaintiffs (newspaper carriers) "would not receive 'any benefits or other compensation currently paid by [Defendant] The Star to its employees or hereafter declared by the Star for the benefit of its employees.'" *Capital Cities*, 141 F.3d at 1410. Based on that language, the *Capital Cities* court concluded that "it is clear under the Agreements – bilateral contracts entered into at the commencement of the working relationship – that the Carriers were not entitled to benefits under the Star's ERISA plans." *Id.*

---

Court's ruling on Ritchie's motion to dismiss Kermath's original complaint (Order 6-7), Ritchie has not moved to dismiss the amended Count II on that basis.

[3] Employees can be excluded from ERISA plans. *See Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1440 (7th Cir. 1996) (acknowledging that an ERISA plan "need not include all employees"); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 587 (1st Cir. 1993) ("ERISA does not prohibit knowing and voluntary relinquishment of employee benefits.").

As the Court has already recognized, the Agreements' waiver language is clear, and must be enforced unless Kermath can plead facts establishing that it is not enforceable. *See* Order 10; *Capital Cities*, 141 F. 3d at 1410; *see also Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 572 (7th Cir. 1995) ("[T]he burden rests on the plaintiff to challenge specifically his voluntary and knowing consent to the release"). Kermath has not alleged such facts.

**B. Kermath Fails To Allege Plausibly That His Waiver Of Benefits Is Invalid.**

**1. Kermath's Status As an Employee or Independent Contractor Is Irrelevant.**

Kermath first contends that his waiver of ERISA benefits was unenforceable because the waiver was tied to his classification as an independent contractor. (*E.g.*, Am. Countercl. ¶¶ 30, 31, 33, 34, 75-77.) Noting the well-established authority that employees can waive their rights to benefits, the Court has already rejected that argument. The Court found that Kermath's waiver "does not depend on Kermath's contractual status as an independent contractor," but "operates independently of the [Agreement's] designation of Kermath as an independent contractor." (Order 10.) The Court's ruling comports with both the plain language of the provision, which unconditionally states that "Contractor will not be entitled to any of the benefits that Client may make available to its employees" (Am. Countercl., Ex. 1 at § 3), and with the caselaw. *See Capital Cities*, 141 F.3d at 1410 ("[S]tatements suggesting that the Star did not in fact treat them as independent contractors ... is irrelevant to the narrow question at issue in this case—namely, whether the Carriers voluntarily agreed that they would receive no benefits"); *Bendsen v. George Weston Bakeries Distrib.*, 2008 WL 4449435, at *4 (E.D. Mo. Sept. 26, 2008) ("[R]egardless of whether Plaintiffs meet the common law definition of employee ... [the parties' agreement] is clear Plaintiffs are not entitled to benefits under the Plans").

### 2. Kermath Has Not Established (And Cannot Establish) That The Agreements Are Void *Ab Initio*.[4]

Kermath alleges that the Agreements are void because his responsibilities were typically performed by employees, not independent contractors. (Am. Countercl. ¶¶ 34, 95-96.)[5] But to be void under Illinois law, the subject matter of the contract must violate the law or public policy. *See Penn Mut. Life Ins. Co. v. GreatBanc Trust Co.*, No. 09 C 06366, 2012 WL 2074789, at *2 (N.D. Ill. June 8, 2012) ("if the subject matter of a contract is illegal, that contract is void ab initio"); *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 65 (Ill. 2006) (contract can be void as contrary to public policy). Performing management and financial services for an investment fund – whether as an independent contractor or an employee – is neither illegal nor against public policy. Kermath never contends otherwise. The Agreements are not void.

Nor has Kermath adequately alleged that the Agreements were voidable. *See Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins.. Co.*, 355 Ill.App.3d 156, 164 (1st Dist. 2004) (stating that defects such as incapacity, mistake, duress, or fraud that may render an agreement voidable). Kermath contends that, based on his roles and responsibilities, he is properly classified as an employee and not, as the Agreements state, an independent contractor. Even if true, that does not render the Agreements voidable. Indeed, whether a worker has contractually agreed to be an independent contractor is one of several factors in analyzing employment status, *see Estate of Suskovich v. Anthem Health Plans of Va. Inc.*, 553 F.3d 559, 565-66 (7th Cir. 2009), and Ritchie

[4] "[I]nterpretation of a contract to determine whether it is void *ab initio* or voidable is a question of law." *All. Prop. Mgmt., Ltd. v. Forest Villa of Countryside Condo. Ass'n*, 2015 IL App (1st) 150169, ¶ 26.

[5] Kermath alleges that the 2006 Agreement was void (Am. Countercl. ¶ 34) and brings an independent Count for declaratory judgment that the 2008 Agreement was void *ab initio*. For the reasons stated herein, the allegations that the Agreements were void do not save his ERISA claim (Count II) and fail to establish he is entitled to declaratory judgment (Count I).

Capital is aware of no authority suggesting that deciding that a worker is an employee in contrast to his contractual classification renders the contract "voidable."

Further, even if the provision regarding Kermath's employment status were deemed voidable, that would not render the Agreement generally, or the waiver provision specifically, unenforceable. *First,* the waiver of benefits cannot be rendered void by the employment status provision because it is severable. In general, where an unenforceable provision operates independently of the rest of the agreement, it can be severed. *See*, *e.g.*, *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21 (2d Dist. 1993); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 757 (N.D. Ill. 2015). Here, the employment clause operates independently. The Agreements governed the terms under which Kermath provided professional services to Ritchie Capital, including those such as compensation and duties of confidentiality. (Am. Countercl., Exs. 1 & 2.) Those provisions, like the benefits waiver, govern Kermath's services to Ritchie Capital regardless of whether he was an employee or independent contractor.

Further, the "existence of a severability clause in a contract certainly strengthens the case for the severance of unenforceable provisions." *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238–39 (2d Dist. 2008); *see also Sanchez*, 78 F. Supp. 3d at 757. The Agreements had a severability provision, stating:

> In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

(Am. Countercl., Ex. 1 at § 9.2 & Ex. 2 at § 8.2.) Thus, even if the employment provision is unenforceable, the rest of the Agreement – including the waiver provision – remains in effect.

*Second*, "because a voidable contract may be ratified, the party seeking to prevent its enforcement must have promptly sought rescission of the contract." *Deutsche Bank Nat. Trust*

*Co. v. Hart*, 2016 IL App (3d) 150714, ¶¶ 41-42. Kermath did not promptly seek rescission. To the contrary, after working for two years under the 2006 Agreement, over one year of which he was President of Ritchie Capital, Kermath signed the 2008 Agreement, which contained *another* waiver of benefits, in late 2008, thus expressly ratifying the 2006 Agreement and the waiver. (Am. Countercl. ¶ 50, Ex. 2.) Kermath then operated under the 2008 Agreement, and the waiver provision, for at least seven years. (*Id.* at ¶ 63.) Through his long-term acquiescence in the 2008 Agreement, Kermath ratified it as well. *See Seward v. B.O.C. Div. of Gen. Motors Corp.*, 805 F. Supp. 623, 632–33 (N.D. Ill. 1992) (finding defendant's release valid where he ratified it by accepting the terms of the release for an extended period of time). Kermath cannot now claim that either Agreement is voidable. *See Deutsche Bank*, 2016 IL App (3d) 150714, ¶ 42 (defendants waived right to challenge agreement because they ratified it).

### 3. Kermath Knowingly and Voluntarily Waived The Benefits.

Kermath first alleges that the waiver was unknowing, and thus unenforceable, because the waiver was prospective, *i.e.*, he did not know which benefits he was giving up. (Am. Countercl. ¶¶ 33, 76.) That argument fails. Courts uphold waivers of prospective benefits, even where the extent of those benefits is uncertain. *See Capital Cities*, 141 F.3d at 1410 (permitting waiver of prospective benefits); *Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust*, No. 01-452, 2002 U.S. Dist. LEXIS 10528, at *9-21 (S.D.N.Y. June 12, 2002) (dismissing action based on waiver of claims that were "neither contested nor known" at the time of the release).

Kermath's other bases to claim that the waiver was not knowing and voluntary fail too. Courts examine such claims using a number of factors in the "totality of the circumstances." *See Howell v. Motorola, Inc.*, 633 F.3d 552, 560 (7th Cir. 2011). The factors include: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for

deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's party. *Id.*

Kermath has not plausibly alleged that, in the totality of the circumstances, Kermath's waiver was invalid and unenforceable. Significantly, Kermath expressly agreed to the waiver not once, but *twice*. Kermath first agreed to the waiver, before he began working with Ritchie Capital, in the 2006 Agreement. (Am. Countercl. ¶ 26, Ex. 1.) After working with Ritchie Capital for over a year, during which time he assumed all the duties that he claims rendered him an "employee" entitled to benefits, he assumed the position of Ritchie Capital's President (*id.* at ¶¶ 36-46, 50), which granted him access to all aspects of Ritchie Capital's investment management business, including its employee benefit plans.[6] In that role, he managed investment funds, fund restructurings, audits, and litigation for Ritchie Capital. (*Id.* at ¶¶ 55, 56.) Then, in November 2008, after more than a year of serving as President and without ever receiving any employee benefits, he signed the 2008 Agreement. (*Id.* at ¶¶ 66, 73; Ex. 2.) As noted, the 2008 Agreement, retroactive to May 2006 (*id.* ¶ 70),[7] contained a waiver provision identical to the one in the 2006 Agreement. (*Id.* at ¶ 75, Ex. 2 at § 3.) After signing the 2008 Agreement, Kermath continued to work for Ritchie Capital for at least seven more years as its President and as an officer, without ever receiving the waived benefits. (*Id.* at ¶¶ 63, 64.) As a

---

[6] Kermath alleges that he had "access to almost every aspect of [Ritchie Capital's] business," and his responsibilities included asset management, investment fund restructuring, and employment issues such as supervising and evaluating subordinates and managing company policies. (*Id.* at ¶¶ 53, 59-62, 65.)

[7] This second waiver, which by its terms extended back to May 2006, cures any defects that might arise from the 2006 Agreement's reference to a term that expired on June 30, 2006.

sophisticated professional who signed – not once, but twice – clear documents with full access to all the information he needed to understand what he was waiving, and then operated under that arrangement for many years without complaint or challenge, Kermath's assertion that his waiver was involuntary or unknowing is wholly implausible.

Kermath's conclusory assertions that he "did not have a sufficient opportunity to review the [Agreements] with counsel of his choosing before signing" them (Am. Countercl. ¶¶ 32, 69), and that the Agreements were "not [] document[s] the parties negotiated" (*id.* ¶¶ 27, 69), do not alter that conclusion. First, such "naked assertions" are devoid of the "factual enhancement" required to adequately state a claim. *See Iqbal*, 556 U.S. at 678. Kermath does not (i) allege that Ritchie Capital imposed a time limit, (ii) identify the time limit he purportedly operated under, or (iii) explain why the time period was not sufficient.[8] Nor does he allege that he asked Ritchie Capital to consult an attorney but was denied. Similarly, regarding the purported lack of negotiations, Kermath fails to allege that he sought to negotiate and was refused, and fails to ascribe any significance to the asserted lack of negotiations. That does not suffice to state a claim. *Id.*[9]

---

[8] Undermining the notion that he had insufficient time to consider the waiver, Kermath had at least two years after signing the first waiver to think about the waiver, to understand the impact of the waiver, and to consult with his attorney about the wavier before he signed the second, *identical* waiver in 2008. (Am. Countercl. ¶¶ 26, 73.) Further, the Agreements permitted Kermath unilaterally to terminate them at any time upon fourteen days' notice to Ritchie Capital. (*Id.*, Exs. 1 & 2, § 7.2.) Kermath could have reviewed the waiver or other provisions with counsel at any time, and thereafter canceled either Agreement.

[9] Also, even if Kermath had properly pleaded denial of consultation with counsel or absence of negotiations, such allegations are inadequate. *Sako v. Ohio Dept. of Admin. Svcs.*, 2007 WL 1500905, *6-7 (S.D. Ohio May 21, 2007) (release valid even though plaintiff never consulted with counsel, had only "minutes" to review it, and had only a high school education with English as his second language, because he never asked to consult counsel); *Hakim v. Accenture U.S. Pension Plan*, 718 F. 3d 675, 684 (7th Cir. 2013) (valid release by professional absent consultation with attorney or negotiations).

Kermath's counterclaims contain still more reasons to uphold the waiver under the *Howell* factors. Kermath's allegations show that he managed complex issues, including legal issues, and thus plainly had the capacity to understand the waiver he twice signed – particularly because the waiver provision was clear and concise. Indeed, courts routinely find waivers by persons of Kermath's admitted education and experience to be valid. *E.g., Hakim*, 718 F.3d at 684 (knowing and valid waiver by senior manager at consulting firm "[g]iven plaintiff's education level and considerable professional achievements"); *Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, 2008 WL 220101, *4 (N.D. Cal. Jan. 25, 2008) (valid waiver by manager and principal consultant with college degree and 15 years' experience). Moreover, Kermath admits in his Answer that he read and signed the 2006 Agreement (Ans. ¶ 18),[10] which contained the identical waiver provision as the 2008 Agreement, and signed the 2008 Agreement. (Am. Countercl. ¶¶ 73, 76, Ex. 2.) Consideration was exchanged; Ritchie Capital promised Kermath compensation in exchange for Kermath's promise of work. And Kermath does not allege that Ritchie Capital engaged in any wrongful conduct with regard to the waiver.

For these reasons, Kermath's allegation that his waiver was not knowing and voluntary is not plausible. Indeed, Kermath was not a low-level employee with little choice or leverage. Quite the contrary, as President of Ritchie Capital, Kermath occupied a position with significant power and had ample knowledge, experience and opportunity to protect his own interests. Kermath presents no need or reason not to enforce his contractually binding choice not to receive employee benefits. Accordingly, the ERISA claim, and the claim for declaratory judgment that

[10] In determining the adequacy of a counterclaim, the Court must "accept as true any of Plaintiff's allegations admitted by Defendant in its answer." *Moss v. Aaron's, Inc.*, No. 14-3753, 2015 WL 2069274, at *1 (E.D. Pa. May 5, 2015).

the 2008 Agreement is void or unenforceable, fail at the pleading stage. *See Yablon*, 2002 U.S. Dist. LEXIS 10528, at *9-21 (granting dismissal based on waiver of an ERISA claim where only one factor [of six-factor test similar to Seventh Circuit's] supported plaintiff's position).[11]

**II. <u>Counts IV & V Must Be Dismissed Because Kermath Failed to State Claims For Unjust Enrichment And Promissory Estoppel</u>.**

Where a contract governs the relationship of the parties, there can be no claim for unjust enrichment or promissory estoppel. *See Ruffin v. Exel Direct, Inc.*, No. 09 C 1735, 2009 WL 3147589 (N.D. Ill. Sept. 29, 2009) (unjust enrichment); *Matland v. Loyola Univ. of Chicago*, No. 12 C 5165, 2012 WL 5949067, at *3 (N.D. Ill. Nov. 27, 2012) (promissory estoppel). The 2008 Agreement governs Kermath's relationship with Ritchie Capital regarding the claims at issue (*i.e.*, his compensation). Thus, as this Court has recognized, the claims for unjust enrichment and promissory estoppel must be dismissed. (*Cf.* Order 13-14.)

Kermath attempts to avoid the effects of his waiver, and save his equitable claims for unjust enrichment and promissory estoppel, by alleging that the Agreements are void and unenforceable. But as explained (*supra* Section I.B), those attempts fail. Because the Agreements are valid and govern the claims at issue, Kermath's claims should be dismissed.[12]

---

[11] Because the Court dismissed Kermath's IWPCA claim regarding accrued but unused vacation time without leave to re-plead (Order 14), Kermath's addition of vacation-related IWPCA allegations (*e.g.*, Am. Countercl. ¶¶ 148-49) should be disregarded. In all events, the allegations are implausible. Kermath alleges Ritchie Capital made "$30,000 monthly payments to Kermath, even for months when he was vacationing, sick or otherwise not working." (*Id.* at 139.) As the Court noted (Order 12, n.11), this shows Kermath was not entitled to payment for vacation days – he received a monthly salary regardless of vacation days used. Also, Kermath never alleges he ever received payment for accrued vacation days.

[12] The unjust enrichment claim fails as to Thane Ritchie for the additional reason that Kermath failed to allege, as he must, that Thane Ritchie received any benefit from the alleged denial of wages and benefits. *See Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. July 6, 2010); *Sherman v. Ryan*, 392 Ill. App. 3d 712, 734-35 (2009) (benefit must accrue to individual defendants, not their company). Kermath offers no facts supporting the conclusion that "Kermath's services benefited ... Thane Ritchie." (Am. Countercl. ¶ 157.) Other allegations make clear that to the extent any benefit was conferred, Ritchie Capital – and not Thane Ritchie – retained it. (*Id.* (claiming his "labor, skill and expertise" were "for the benefit of [Ritchie Capital's] business."). )

## CONCLUSION

For the aforementioned reasons, Counter-Defendants Ritchie Capital, Thane Ritchie, and the plan administrators for Ritchie Capital respectfully request that this Court dismiss Counts I, II, IV and V of the First Amended Counterclaims with prejudice.

Dated: January 27, 2017

Respectfully submitted,

By: /s/ Brian A. McAleenan
One of the attorneys for Defendants

Thomas K. Cauley, Jr.
Brian A. McAleenan
Veena K. Gursahani
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Plaintiff and Counter-Defendants*

**CERTIFICATE OF SERVICE**

I, Brian A. McAleenan, one of the attorneys for Counter-Defendants Ritchie Capital, Plan Administrator, and Thane Ritchie, certify that on the 27th day of January, 2017, I caused a copy of the foregoing document, entitled "Memorandum of Law in Support of Motion to Dismiss Defendant John Kermath's First Amended Counterclaims," to be filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record as well as attorneys registered to receive such filings.

/s/ Brian A. McAleenan

Brian A. McAleenan
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000