**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RITCHIE CAPITAL MANAGEMENT, L.L.C., ) ) Plaintiff, ) ) v. ) ) JOHN KERMATH, ) ) Defendant. ) _____ ) JOHN KERMATH, ) ) Counter-Plaintiff, ) ) v. ) ) RITCHIE CAPITAL MANAGEMENT, L.L.C., ) AARON ROBERTS THANE RITCHIE, and ) PLAN ADMINISTRATOR FOR THE ) RITCHIE CAPITAL MANAGEMENT, L.L.C. ) BENEFIT PLANS, ) ) Counter-Defendants. ) | No. 15 C 8021 Judge Sara L. Ellis |

## OPINION AND ORDER

Ritchie Capital Management, L.L.C. ("Ritchie Capital"), an investment management company, filed suit against John Kermath, its former president, for misappropriating Ritchie Capital's confidential and privileged information. Kermath filed amended counterclaims against Ritchie Capital, the Plan Administrator for the Ritchie Capital Management, L.L.C. Benefit Plans (the "Plan Administrator"), and Ritchie Capital's founder and former chief executive officer, Aaron Roberts Thane Ritchie ("Thane Ritchie," and collectively with Ritchie Capital and the Plan Administrator, the "Ritchie Parties"), seeking to recover benefits arising from his alleged misclassification as an independent contractor while working for Ritchie Capital, in

addition to outstanding wages, bonuses, and other employment-related compensation he did not receive when he left Ritchie Capital's employment.[1] Kermath brings claims for unjust enrichment, promissory estoppel, and violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Illinois Wage Payment and Collection Act (the "IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* He also seeks a declaratory judgment that his agreement with Ritchie Capital was void *ab initio*. The Court previously dismissed Kermath's ERISA and unjust enrichment claims without prejudice and limited his IWPCA claim to unpaid wages and bonuses. *See* Doc. 74. The Ritchie Parties move for dismissal of the declaratory judgment, ERISA, unjust enrichment, and promissory estoppel claims, and argue in a footnote that Kermath cannot resurrect his IWPCA claim for unused vacation time.

Because Kermath has adequately alleged that the independent contractor provision in the 2008 professional services agreement (the "2008 PSA") may offend public policy, the Court allows Kermath to proceed on his claim challenging the enforceability of the 2008 PSA. To the extent the classification portion of the 2008 PSA is invalid, the Court finds it severable, meaning that the waiver of benefits provision remains enforceable. But because Kermath has alleged he did not knowingly and voluntarily waive his right to benefits, which the Court cannot properly determine at this stage, the Court allows Kermath to proceed on his ERISA claim. And because Kermath has adequately pleaded his unjust enrichment and promissory estoppel claims in the alternative to his IWPCA claims, Kermath may pursue those claims, except that the Court dismisses the unjust enrichment claim as to Thane Ritchie, who Kermath does not allege directly

---

[1] Ritchie Capital filed suit against not only Kermath but also Reservoir Capital Partners, L.P., Reservoir Capital Group L.L.C., Reservoir Capital Master Fund, L.P., Reservoir Capital Master Fund II, L.P., Reservoir Capital Investment Partners, L.P. (collectively, "Reservoir"), and Eric Engler. Reservoir then filed counterclaims against the Ritchie Parties. All claims among the Ritchie Parties, Reservoir, and Engler have been dismissed with prejudice pursuant to the parties' joint motion. Docs. 63, 65. Only the claims between the Ritchie Parties and Kermath remain pending.

retained any benefit. Finally, because Kermath has added allegations to support an IWPCA claim for accrued unused vacation time, Kermath's IWPCA claim now includes his request to recover not only unpaid wages and bonuses but also unused vacation time.

## BACKGROUND[2]

Ritchie Capital manages investment funds. Although it currently has its headquarters in the Cayman Islands, it also had offices in Illinois. Kermath began working for Ritchie Capital in May 2006 in Illinois.

At all times, Ritchie Capital treated Kermath as an independent contractor. Ritchie Capital memorialized Kermath's employment arrangement in two professional services agreements, both of which Ritchie Capital drafted. The first one (the "2006 PSA"), which Kermath signed on May 10, 2006, had an initial term of May 6 to June 30, 2006 and was subject to renewal. Kermath continued working for Ritchie Capital beyond June 30, 2006, but no formal renewal of the 2006 PSA occurred after that date. On November 14, 2008, Kermath signed the second professional services agreement (the "2008 PSA"), which explicitly stated that it was retroactive to May 6, 2006. Both the 2006 and the 2008 PSAs provide that Kermath was an independent contractor, that nothing in the PSA "should be construed to create . . . [an] employer-employee relationship," and that Kermath "is not the agent of [Ritchie Capital] and is not authorized to make any representation, contract, or commitment on behalf of [Ritchie Capital]." Doc. 76-1 § 3; Doc. 76-2 § 3. Further, both the 2006 and the 2008 PSAs provide that Kermath "will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees, such as group insurance, profit-sharing, or retirement benefits." Doc. 76-1 § 3;

---

[2] The facts in the background section are taken from Kermath's first amended counterclaims and the exhibits attached thereto and are presumed true for the purpose of resolving the Ritchie Parties' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Doc. 76-2 § 3. Ritchie Capital agreed to pay Kermath "a fee for services rendered under [the respective PSA] as set forth in Exhibit A," as well as to reimburse him "for any reasonable expenses incurred in connection with the performance of services under" the PSAs. Doc. 76-1 § 2; Doc. 76-2 § 2. Upon the termination of the PSA, Ritchie Capital was to pay Kermath "fees and expenses on a proportional basis . . . for work which is then in progress, up to and including the effective date of such termination." Doc. 76-1 § 2; Doc. 76-2 § 2. While the 2006 PSA set out a more detailed payment schedule, Doc. 76-1 at 8, Exhibit A in the 2008 PSA indicated only that Kermath's fee for his services was to be "based on a rate per month as determined from time to time." Doc. 76-2 at 6. Kermath claims he did not have a sufficient opportunity to consult with an attorney before signing the 2006 or 2008 PSAs and did not understand the benefits he was foregoing by signing those agreements.

Despite the PSA's formalization of his status as an independent contractor, Kermath's day-to-day activities suggested an employer-employee relationship: he used Ritchie Capital's email, phone, and computer systems, office space, and business equipment; he had a Ritchie Capital email address; Ritchie Capital provided Kermath with a company-issued Blackberry and paid for the data charges; he routinely worked five days a week from Ritchie Capital's Illinois offices; he used a corporate credit card for business-related expenses; and he reported to one or more superiors and supervised other employees. Additionally, Ritchie Capital paid Kermath bonuses tied in part to his work performance and he received deferred compensation amounts based on the performance of Ritchie Capital managed funds.

In September 2007, Ritchie Capital promoted Kermath to president of the company, with Thane Ritchie remaining as chief executive officer. Kermath began signing documents on Ritchie Capital's behalf and had access to almost all aspects of the business. His job duties

included asset management, staffing and supervision of employees, oversight of the accounting department, audit management, valuations, and litigation strategy. Kermath also determined bonus payments and salaries for other Ritchie Capital employees, subject to Thane Ritchie's final approval. When Thane Ritchie moved out of the country, Kermath effectively became the *de facto* chief executive officer as well, with certain Ritchie Capital regulatory filings even identifying him as such.

Although Thane Ritchie always remained involved in Ritchie Capital and oversaw Kermath's work there, on March 17, 2015, Thane Ritchie reasserted day-to-day operational control over Ritchie Capital and demoted Kermath to vice president. He then reappointed Kermath as president in April 2015. This did not last long, however, as Thane Ritchie again demoted Kermath to vice president on May 8. Kermath resigned from Ritchie Capital on August 7, 2015. When he left, he did not receive his outstanding compensation from Ritchie Capital. This included a base $30,000 monthly payment for the months of July and August 2015, an amount he had been receiving since 2007 regardless of whether he was sick, vacationing, or otherwise not working for all or part of any month. Additionally, Kermath did not receive $160,000 of his 2014 bonus, which Ritchie Capital had agreed in writing to pay him no later than September 30, 2015. Finally, Kermath did not receive payment for 3.5 days of accrued and unused vacation time under Ritchie Capital's written vacation policy, which provided that, upon termination, employees would receive a lump sum payment for vacation days that had been accrued but not taken during the current vacation year.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Declaratory Judgment and ERISA Claims (Counts I and II)

Kermath claims that Ritchie Capital misclassified him as an independent contractor and consequently, wrongfully excluded him from coverage under its employer-sponsored benefit plans during his employment. He asks that the Court declare the 2008 PSA void *ab initio* entirely or at least with respect to those provisions that designate Kermath as an independent contractor and define the effects of the misclassification, including his exclusion from employer-provided benefits. Kermath also seeks to recover all benefits allegedly due him under these benefit plans and to clarify his rights to future benefits, if any. To state a claim for these benefits under ERISA, Kermath must allege that (1) he qualifies as an employee, and (2) he was eligible to receive benefits under the terms of Ritchie Capital's benefit plans. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 571 (7th Cir. 2009); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992) (adopting test for determining who qualifies as an employee under ERISA).

The Ritchie Parties reassert their argument that Kermath cannot proceed on his ERISA claim because he waived any claim to such benefits in the 2006 and 2008 PSAs.[3] *See* Doc. 76-2 § 3 ("[Kermath] will not be entitled to any of the benefits that [Ritchie Capital] may make available to its employees, such as group insurance, profit-sharing, or retirement benefits."). Kermath attempts to avoid this argument by claiming that the entire 2008 PSA, including the waiver provision, was void *ab initio* based on his misclassification as an independent contractor. Alternatively, Kermath contends that he has adequately alleged that he did not knowingly and voluntarily waive his right to the benefits, requiring the claim to proceed to further discovery.

A.   **Validity of the 2008 PSA**

First, the Court must address Kermath's argument that the 2008 PSA was void *ab initio*. Illinois law provides that a contract is void *ab initio* if "it expressly contravenes the law or a known public policy" of Illinois. *In re Marriage of Newton*, 955 N.E.2d 572, 584, 2011 IL App (1st) 090683, 353 Ill. Dec. 105 (2011). Kermath contends that the 2008 PSA was void *ab initio* because, by designating him as an independent contractor instead of an employee, Ritchie Capital violated the Internal Revenue Code and violated public policy against the misclassification of employees. Illinois courts "have explicitly stated that it is a clearly established police of Illinois to prevent its citizens from violating federal law." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 942 (7th Cir. 2002) (collecting cases). At

---

[3] The Ritchie Parties do not move to dismiss the ERISA claim based on the fact that Kermath cannot establish that he qualified as an employee based on the Court's previous ruling that, at the pleading stage, Kermath sufficiently alleged that Ritchie Capital should have treated him as an employee. *See* Doc. 83 at 7 n.2 (Ritchie Parties acknowledging Court's ruling while maintaining that Kermath cannot establish that he was a Ritchie Capital employee); Doc. 74 at 6–7 (Court's opinion on the Ritchie Parties' motion to dismiss Kermath's counterclaims). As before, the Ritchie Parties also do not argue that Kermath failed to exhaust his administrative remedies, and so the Court similarly does not address this issue here. *See In re FedEx Ground Package Sys., Inc.*, 722 F. Supp. 2d 1033, 1047–52 (N.D. Ind. 2010) (finding that exhaustion would not be futile where plaintiffs contended they were misclassified as independent contractors because issue of eligibility under plans needed to be determined).

least one Illinois court has found that Illinois "has a legitimate interest in preventing employee misclassification because employees who are misclassified as independent contractors lose the benefit of worker protection laws, including minimum wage, discrimination, and occupational safety laws," noting as well the revenue Illinois loses from misclassification. *Bartlow v. Costigan*, 974 N.E.2d 937, 953, 2012 IL App (5th) 110519, 363 Ill. Dec. 140 (2012) (addressing misclassification in the construction industry), *aff'd in relevant part*, 13 N.E.3d 1216, 2014 IL 115152, 383 Ill. Dec. 95 (2014); *see also Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423, 430–31 (7th Cir. 2012) (in certifying question of plaintiffs' employment status to Kansas Supreme Court, noting that "the issue [of misclassification] is of great importance not just to this case but to the structure of the American workplace," highlighting the "economic incentives for employers to use independent contractors," the "potential for abuse in misclassifying employees as independent contractors" in that they "are denied access to certain benefits and protections," and the "significant costs to government" resulting from misclassification in the form of uncollected tax revenues); *Benders v. Bellows & Bellows*, 515 F.3d 757, 767 (7th Cir. 2008) (federal laws concerning classification of workers as employees or independent contractors "affect the tax revenues collected by the federal government, the compliance with which . . . is a matter of public concern"); U.S. Dep't of Labor Administrator's Interpretation No. 2015-1, 2015 WL 4449086, at *1 (July 15, 2015) (noting as a matter of public policy that misclassification results in employees not receiving "important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation" and that "[m]isclassification also results in lower tax revenues for government"). Taking state and federal policy against misclassification into account, the Court finds that Kermath has sufficiently alleged a basis to find that the 2008 PSA, at least to the extent it classifies Kermath as an

independent contractor and not an employee, was void *ab initio*.[4] Thus, the Court allows Kermath to proceed on his claim concerning the enforceability of the 2008 PSA.

B. **Severability of Waiver Provision**

But even assuming that Ritchie Capital misclassified Kermath as an independent contractor, rendering that portion of the 2008 PSA void, the Ritchie Parties contend that the Court should still enforce the waiver of benefits provision contained therein because the 2008 PSA includes a severability clause. The severability clause in the 2008 PSA provides, in relevant part:

> In case any one or more of the provisions contained in this Agreement shall, for any reasons, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

Doc. 76-2 § 8.2. "An unenforceable provision is severable unless it is 'so closely connected' with the remainder of the contract that to enforce the valid provisions of the contract without it 'would be tantamount to rewriting the [a]greement." *Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 549, 382 Ill. App. 3d 1189, 321 Ill. Dec. 819 (2008) (alteration in original) (quoting *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1344, 250 Ill. App. 3d 13, 189 Ill. Dec. 288 (1993)). In determining whether severance is appropriate, the Court should take into account

---

[4] Because the Court finds that Kermath has adequately alleged that the 2008 PSA was void *ab initio*, the Court need not address the Ritchie Parties' arguments that he cannot claim that the 2008 PSA was voidable and that Kermath ratified the 2008 PSA by failing to rescind it. A void contract cannot be ratified, and so the fact that Kermath continued working for years after signing the 2008 PSA does not affect the Court's analysis in determining whether he can proceed on his claim that the 2008 PSA should be found void *ab initio*. *See Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 713, 355 Ill. App. 3d 156, 290 Ill. Dec. 394 (2004) ("[A] contract that is void *ab initio* is treated as though it never existed; neither party can chose [*sic*] to ratify the contract by simply waiving its right to assert the defect. On the other hand, if a contract is merely voidable, a party can either opt to void the contract based upon that defect, or choose, instead, to waive that defect and ratify the contract despite it.").

"the extent to which the provisions operate independently of each other" and whether the agreement includes a severability clause. *Abbott-Interfast Corp.*, 619 N.E.2d at 1343–44. "The existence of a severability clause in a contract certainly strengthens the case for the severance of unenforceable provisions because it indicates that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions." *Id.* at 1343.

The Court previously found that the waiver of benefits provision in the 2008 PSA does not depend on Kermath's contractual status as an independent contractor. *See* Doc. 74 at 10 (comparing waiver in 2008 PSA to that found in *Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1410 (7th Cir. 1998), concluding that it operated independently of the 2008 PSA's designation of Kermath as an independent contractor); *cf. Stewart v. Project Consulting Servs., Inc.*, No. CIV. A. 99-3595, 2001 WL 1334995, at *2–3 (E.D. La. Oct. 26, 2001) (finding that plaintiff did not waive right to pursue ERISA benefits where agreement provided that "plaintiff is not entitled to employee benefits *because* he is not an employee"). Taken together with the 2008 PSA's severability clause, this supports a finding that the provision designating Kermath as an independent contractor can be severed from the remainder of the 2008 PSA, including the waiver provision, and that the waiver provision remains enforceable despite Kermath's arguments that the provision identifying him as an independent contractor instead of an employee is void *ab initio*.[5]

---

[5] In his response to the motion to dismiss, Kermath attempts to tie the waiver of benefits to his employment status, arguing that the Court should rely on the Ninth Circuit's decision in *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997), in which the court concluded that the terms of the plaintiffs' contracts, including waivers of benefits, were "results which hinge on the status determination itself." *Id.* at 1011–12. But *Vizcaino* admittedly did not consider the statements regarding benefits in the plaintiffs' agreements as a waiver of benefits. *Id.* at 1012. Instead, in *Vizcaino*, the plaintiffs' agreements specifically tied their status as independent contractors to their lack of benefits. *See id.* at 1010 (agreements provided that "[a]s an Independent Contractor to Microsoft, you are self employed and are responsible to pay all your own insurance and benefits"); *see also Jammal v. Am. Family Ins.*, No. 1:13 CV 437, 2013 WL 4049673, at *1 n.3 (N.D. Ohio Aug. 9, 2013) (noting language of agreement stating

Kermath argues, however, that the Court should not prematurely determine that he waived his rights to benefits at the motion to dismiss stage because such a waiver must be made knowingly and voluntarily and that determination cannot be made from the face of the complaint.[6] *See Melton v. Melton*, 324 F.3d 941, 945 (7th Cir. 2003) (for beneficiary to waive ERISA benefits, waiver must be "explicit, voluntary, and made in good faith" (citation omitted)); *Finz v. Schlesinger*, 957 F.2d 78, 81 (2d Cir. 1992) (ERISA waivers are given stricter scrutiny than those in typical contract cases); *Craig v. Smith*, 597 F. Supp. 2d 814, 823 (S.D. Ind. 2009) (collecting cases). Kermath alleges that Ritchie Capital drafted the 2008 PSA, that he did not have a sufficient opportunity to review it with counsel of his choosing before signing it, and that the parties did not negotiate it in any respect. Kermath further claims that he did not understand the rights he was giving up by signing the 2008 PSA and that he only understood the legal effects of the waiver language in 2015. The Ritchie Parties contend that Kermath's allegations are too conclusory and contradicted by other facts in the counterclaim, but because of the fact-intensive inquiry required to determine whether Kermath knowingly and voluntarily waived his right to benefits, the Court finds he may proceed to discovery to further explore his contentions that the waiver is unenforceable because he did not knowingly and voluntarily enter into it. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011) (listing eight factors courts consider in determining the validity of releases of ERISA claims); *Smart v. Gillette Co. Long-Term*

---

that "[a]s an independent contractor you . . . are not eligible for various employee benefits"). Kermath does not present any compelling argument for the Court to deviate from its prior conclusion that the waiver provision operates independently of his (mis)classification as an independent contractor so as to remove this case from the waiver analysis or require the Court to find that the allegedly void provision cannot be severed from the remainder of the 2008 PSA, including the waiver provision.

[6] Kermath explicitly addresses the waiver provision in his amended counterclaims, so the Court does not find merit in Kermath's argument that it should defer consideration of the issue because it is an affirmative defense, particularly because to state a claim for benefits under ERISA, Kermath must allege that he is eligible to receive benefits, which requires him to plead around the waiver provision.

*Disability Plan*, 70 F.3d 173, 182 (1st Cir. 1995) (noting "fact-intensive" nature of waiver inquiry). Whether Kermath will prevail on his ERISA claim, particularly in light of the fact that he worked for years without benefits and appears not to have expressed dissatisfaction with his arrangement until his termination, is an issue to be resolved on a more complete record. *See Capital Cities*, 141 F.3d at 1410 (noting on summary judgment that argument that carriers were unaware of waiver was unavailing where they had worked for years without benefits and never "expressed dissatisfaction with their compensation package, including their non-participation in" the benefit plans).

## II. Unjust Enrichment and Promissory Estoppel (Counts IV and V)

Kermath also brings claims for unjust enrichment and promissory estoppel against Ritchie Capital and Thane Ritchie as alternative forms of relief to his IWPCA claim to recover the compensation he claims he properly earned but has not received from Ritchie Capital. The Ritchie Parties argue that Kermath cannot pursue these quasi-contractual remedies because his claims concerning unpaid compensation are governed by the 2008 PSA and offshoot compensation agreements. *See Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract."); *Wagner Excello Foods, Inc. v. Fearn Int'l Inc.*, 601 N.E.2d 956, 964–65, 235 Ill. App. 3d 224, 176 Ill. Dec. 258 (1992) (promissory estoppel claim not available where parties have entered into a binding contract on the same issue). Heeding the Court's instructions, Kermath has taken care to plead his unjust enrichment and promissory estoppel claims in the alternative. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943, at *5 (N.D. Ill. Apr. 17, 2003) ("While Plaintiff is entitled under Federal Rule of Civil Procedure 8(e)(2) to

12

plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, Plaintiff's unjust enrichment claim must not include allegations of a specific contract governing the parties' relationship."). Kermath has ensured that these claims do not include any allegations of an express contract, claiming instead that the parties developed a course of dealing regarding his monthly compensation and that emails and other writings document the bonus and vacation pay he seeks to recover. Because Kermath has properly pleaded these quasi-contractual claims in the alternative, the Court cannot accept the Ritchie Parties' invitation to dismiss them because of the existence of the 2008 PSA and related compensation agreements.

But the Court agrees that Kermath's unjust enrichment claim against Thane Ritchie fails. Although Kermath alleges that Thane Ritchie was Ritchie Capital's chief executive officer, he provides no basis to pierce the corporate veil or disregard corporate formalities so as to allow the Court to infer that Thane Ritchie himself unjustly retained a benefit to Kermath's detriment, as opposed to Thane Ritchie's company, Ritchie Capital, failing to pay Kermath the compensation he claims to be owed. *Cf. PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 965–66 (N.D. Ill. 2011) (allowing unjust enrichment claim to proceed against individual defendant where plaintiff alleged that individual defendant controlled corporate defendants and, as alter ego of corporate defendants, was unjustly enriched). As a result, the Court dismisses the unjust enrichment claim against Thane Ritchie.[7]

---

[7] Because this is the second time the Court addresses Kermath's unjust enrichment claim and the Ritchie Parties raised the adequacy of Kermath's pleading against Thane Ritchie in their motion to dismiss the initial counterclaims, the Court finds it appropriate to dismiss the unjust enrichment claim against Thane Ritchie with prejudice. *See Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

### III. IWPCA Unused Vacation Pay Claim (Count III)

In a footnote, the Ritchie Parties contend that the Court should disregard Kermath's additional allegations of entitlement to payment for unused vacation days under the IWPCA. The Court previously allowed Kermath to proceed on his IWPCA claim but limited that claim to unpaid wages and bonuses. Doc. 74 at 12 n.11, 14. In doing so, the Court noted that Kermath had not plausibly suggested that he had an agreement to be compensated for unused vacation days. Kermath's amended counterclaims include allegations that Ritchie Capital had a written vacation policy, which provided for a lump sum payment of unused vacation days upon termination, and that Kermath had accrued twelve vacation days in 2015 and used 8.5 of them as of his resignation date, leaving him with 3.5 days of unused vacation days for which he seeks payment. Although the Court agrees that these allegations may not align with his allegations that Ritchie Capital paid Kermath the same $30,000 monthly salary regardless of the number of vacation days he took in any given month, at this stage the Court allows Kermath to proceed on his IWPCA claim not only for unpaid wages and bonuses but also for unused vacation days.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Ritchie Parties' motion to dismiss [82]. The Court dismisses Kermath's unjust enrichment claim against Thane Ritchie (First Amended Counterclaim Count 4) with prejudice. The Court orders the Ritchie Parties to answer the remaining allegations of the First Amended Counterclaims by June 16, 2017. The Court further strikes the status date set for June 6, 2017 and resets it to August 2, 2017 at 9:30 a.m.

Dated: June 1, 2017

SARA L. ELLIS
United States District Judge